FILED
CLERK, U.S. DISTRICT COURT

6/29/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CD___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 2:22-cr-00283-FMO |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1341: Mail Fraud] |
| TONY ANHTUAN RAWLINGS, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. §§ 1341, 2(a), 2(b)]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1. World Variety Produce, Inc., doing business as Melissa's World Variety Produce, Inc. ("Melissa's"), was a California corporation conducting business in Los Angeles County, and elsewhere.

2. Beginning no later than January 1, 2000, and continuing through in or around March 2018, defendant TONY ANHTUAN RAWLINGS worked for Melissa's as its Chief Information Officer. As Chief Information Officer, defendant RAWLINGS had the authority to approve

vendor invoices from information technology and information systems vendors for services provided to Melissa's.

3. On or about February 15, 2000, Co-schemer One filed a Fictitious Business Name Statement with Ventura County for Creative Network Solutions ("CNS"), and therein Co-schemer One asserted that Co-schemer One was doing business as CNS, that CNS's business was conducted by an individual, and that Co-schemer One had not yet begun to transact business under the name CNS.

4. Co-schemer One had previously worked as a bank administrator and a client relationship manager and in commercial lending, but Co-schemer One had no prior experience with information technology or information systems businesses.

5. CNS was a shell entity; other than Co-schemer One, CNS had no employees, officers, or directors; it provided no information technology or information systems services (or other services); it had no vendors; and it provided no products.

6. Defendant RAWLINGS and Co-schemer One had become friends in high school, but they told employees of Melissa's that they met at an information technology convention.

7. Defendant RAWLINGS lived in Orange County and Co-schemer One lived in Ventura County.

B. THE SCHEME TO DEFRAUD

8. Beginning no later than on or about February 15, 2000, and continuing until in or around April 2018, in Los Angeles, Orange, and Ventura Counties, within the Central District of California, and elsewhere, defendant RAWLINGS and Co-schemer One, each aiding and abetting the other, knowingly and with intent to defraud, devised, intended to devise, and participated in a scheme to defraud Melissa's

as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

9. The fraudulent scheme was operated and was carried out, in substance, as follows:

    a. At defendant RAWLINGS's instruction, Co-schemer One would create approximately one to two fictitious invoices per month, in which CNS would bill Melissa's for services that CNS did not provide.

    b. Co-schemer One would email the CNS invoices to defendant RAWLINGS, who would approve of the invoices, sometimes by signing the invoices, and provide the approved invoices to Melissa's Chief Financial Officer, who in turn would ensure Melissa's paid CNS for the amounts listed in the invoices.

    c. Defendant RAWLINGS falsely represented to Melissa's Chief Financial Officer and others at Melissa's that CNS provided information technology and information systems services to Melissa's, although defendant RAWLINGS and Co-Schemer One both knew that CNS never provided services to Melissa's or any other company, and that the invoices Co-schemer One submitted to defendant RAWLINGS referenced fictitious services.

    d. Defendant RAWLINGS and Co-schemer One would cause an employee of Melissa's to send CNS payment in the form of checks sent via U.S. Mail to a P.O. Box registered to CNS, and controlled by Co-schemer One, located in Moorpark, California.

    e. Co-schemer One would deposit the checks Co-schemer One received from Melissa's for the fictitious services provided by CNS into a business checking bank account that only Co-schemer One

1  controlled, first an account ending in -239-2 with Washington Mutual
2  Bank, F.A., and later, in an account ending in -2392 with JP Morgan
3  Chase Bank, N.A.

4            f.   Co-schemer One would provide defendant RAWLINGS a
5  portion of the money paid to CNS by Melissa's by paper checks sent
6  via U.S. Mail or by electronic checks sent via electronic wires to an
7  Orange County Teachers Federal Credit Union -- later called
8  SchoolsFirst Federal Credit Union -- account ending in -0538,
9  controlled by defendant RAWLINGS.

10           g.   Defendant RAWLINGS and Co-schemer One would cause
11 Melissa's to pay CNS approximately $5,805,504 between in our around
12 February 2000 and in or around April 2018.

13 C.   USE OF THE MAILS

14      10.  On or about December 7, 2017, in Los Angeles County, within
15 the Central District of California, and elsewhere, defendant RAWLINGS
16 and Co-schemer One, for the purpose of executing the above-described
17 scheme to defraud, willfully caused to be placed in a post office and
18 authorized depository for mail matter, to be sent and delivered by
19 the United States Postal Service, and knowingly caused to be
20 delivered by mail according to the directions thereon, Check 509943
21 ///
22 ///

in the amount of $47,100, at address P.O. Box 1135, Moorpark, California 93020.

                TRACY L. WILKISON
                United States Attorney

*/s/ signature*

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office

ELI A. ALCARAZ
Assistant United States Attorney
Riverside Branch Office